## CANADIAN BANK OF COMMERCE v. BERG.

(Circuit Court of Appeals, Ninth Circuit. March 21, 1927.)

No. 5009.

1. **Evidence** ⬅441(12)—**Evidence of agreement for application of proceeds on guaranteed account held not to vary guaranty.**

Evidence that, at time of execution of written guaranty of liabilities of logging company, guarantor was given bill of sale of certain property belonging to company, with understanding that, on sale thereof, proceeds would be applied to reduce guaranty, *held* not parol testimony altering terms of written contract of guaranty, since only effect of parol evidence was to show that, before executing guaranty, guarantor had received security to protect himself against loss.

2. **Banks and banking** ⬅112—**Bank held liable to guarantor for misapplication by officer interested in logging company of proceeds of company property sold under directions of guarantor holding property as security.**

Where bank officer, who was also interested in logging company, sold certain trucks of logging company under instructions of person holding bill of sale as security for guaranteeing company's liabilities, lower court's holding that bank officer, in selling trucks under directions that proceeds were to be applied on the guaranty, was acting in behalf of bank, and not for logging company, as bearing on bank's liability to guarantor for misapplication of proceeds to general indebtedness of company, *held* not erroneous.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit by A. Berg against the Canadian Bank of Commerce. Decree for plaintiff, and defendant appeals. Affirmed.

The appellant, a Canadian corporation, was engaged in conducting a branch bank at Portland, Or., in charge of one Malpas, who was the manager in full control thereof. The appellee and Malpas were each stockholders in the Porter-Carstens Logging Company, an Oregon corporation, and Malpas was its secretary. On July 3, 1923, in consideration of the appellee's agreement to guarantee its liability to the bank, the logging company transferred to him by bill of sale, executed by its president and by Malpas as its secretary, 24 sets of logging trucks, as security against loss through such guaranty. On July 16, 1923, the appellee executed to the bank a written guaranty of the liabilities of the logging company then existing and thereafter to be incurred, not exceeding $20,000. In April, 1924, the appellee sold his stock in the logging company. Thereafter he directed Malpas to sell the logging trucks and apply the proceeds to the reduction of liability on the guaranty.

On or about August 28, 1924, Malpas sold 5 sets of the trucks for $5,000 and credited that amount on the guaranty. Subsequently he sold the remainder of the trucks for $14,500; but he credited that sum to the account of the logging company, and applied none thereof to the guaranty, notwithstanding that the appellee had written to the

bank, demanding such application. Malpas subsequently resigned, or was removed, as manager of the bank. At that time the indebtedness of the logging company for money advanced to it by the bank under the management of Malpas was more than $40,000. The appellee brought suit to recover from the bank certain securities belonging to him, which the bank claimed the right to retain as collateral security for the performance of his guaranty. The court below decreed that, upon the payment by the appellee of $550, the balance of the $20,000 guaranteed by him, the appellant restore to him the bonds and stock certificates which were the subject of the suit.

Simon, Gearin, Humphreys & Freed, of Portland, Or., for appellant.

Teal, Winfree, McCulloch & Shuler and Alfred P. Kelley, all of Portland, Or., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is assigned as error that the trial court admitted evidence to show that, about the time of executing the written guaranty, Malpas asked the appellee to execute the same, and that the appellee was given a bill of sale of the logging trucks, and that the understanding was that Malpas, on the sale of those trucks, would reduce the limits of the guaranty by applying the proceeds of the sale thereof. Under this assignment it is urged that the court below erroneously permitted the introduction of parol evidence to vary a written guaranty.

We are unable to follow the reasoning which leads to that conclusion. To us it seems clear that the written guaranty remained unaffected by the bill of sale and that the parol testimony had no tendency to alter its terms. It remained, as it was before, the appellee's undertaking to pay the bank the amount named therein in case of the failure of the logging company to pay it. The only effect of the parol evidence was to show that, before executing the guaranty, the appellee had received from the logging company security to protect him against loss by reason thereof. There is no evidence that he knew that the officers of the appellant were ignorant of the transaction, or that he connived with Malpas in practicing deception upon the appellant; and while it is in evidence that Malpas violated a rule of the appellant in acting as he did as the secretary of the logging company, it is not shown that the appellee was aware of that rule, or that he knew or was charged with notice that the interests of Malpas in the transaction were adverse to those of the appellant.

The second assignment of error, that the court held that the title to the logging trucks passed to the appellee by the bill of sale and became his property, requires no comment in addition to what has been said.

[2] Nor do we find error in the third assignment, which is that the court held that Malpas, in selling the trucks, was acting on behalf of the appellant, and not on behalf of the logging company. The appellee had authorized Malpas to sell the trucks and to apply the proceeds on the guaranty. His acts in pursuance of those instructions were manifestly valid, so far as the appellee is concerned, whether they be regarded as the acts of the appellant or as the acts of Malpas as secretary of the logging company.

Cases are cited, such as Live Stock State Bank v. First Nat. Bank (D. C.) 300 F. 945, to the proposition that the relation of a bank officer to his bank is highly fiduciary, and that with one who has knowledge of the officer's private interest the latter can make no binding obligation for his bank to his own benefit and to its injury. But here the act of Malpas, which inured to his private interest and to the injury of the appellant, was his extension of credit to the logging company far beyond the guaranteed limit. For that extension there is nothing to show that the appellant was responsible. The most that can be said against the security which the appellee took is that by the bill of sale substantial assets of the logging company were diverted; but in that fact there was nothing out of the ordinary course of business, and the appellant through its manager, knew and assented to all that was done.

The decree is affirmed.